IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael Edward Alcantar,<br><br>    Defendant. | CR 11-2230-TUC-DCB (JCG)<br><br>**REPORT AND RECOMMENDATION**<br><br>(Re: Motion to Dismiss for Lack of Jurisdiction) |

Pending before the Court is a Motion to Dismiss filed by Defendant Michael Edward Alcantar on September 19, 2011. (Doc. 79.) The government filed a response on October 4, 2011. (Doc. 104.) This matter came before the Court for a report and recommendation as a result of a referral made on April 25, 2011, pursuant to LRCrim 5.1. The Motion was set for hearing and heard on October 5, 2011.[1] Defendant was present and represented by counsel. The matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Motion.

---

[1] Magistrate Judge Guerin was sworn in as a United States District Court Judge on October 5, 2011 after the hearing on the pending Motion. As this matter was heard when she was a magistrate judge, she has prepared a Report and Recommendation on the motion for review by Judge Bury as the presiding district court judge.

**FACTUAL FINDINGS**

On June 22, 2011, Defendant Michael Edward Alcantar was charged by indictment alleging that on or about May 28, 2008, Defendant and his co-defendants employed Molotov Cocktails while engaging in a drug trafficking crime. (Doc. 44.)

The indictment alleges six counts against Defendant:

Count 1: Possession of a destructive device in violation of 26 U.S.C. § 5841, 5861(d) and 5871;

Count 2: Conspiracy to possess with intent to distribute approximately 2 kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II) and 846;

Count 3: Use of a destructive device in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(1)(B)(ii);

Count 4: Conspiracy to possess a destructive device in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(B)(ii) and 924(o);

Count 5: Carrying an explosive during the commission of a felony in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II), 846 and 844(h)(2); and

Count 6: Conspiracy to carry an explosive during the commission of a felony in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II) and 846.

**ANALYSIS**

Defendant contends that he is entitled to dismissal of the indictment because the drug transactions which form the basis of the alleged charges bear no nexus to interstate commerce sufficient to create federal jurisdiction. Although Defendant appears to be seeking dismissal of the entire indictment, his commerce clause arguments all hinge on whether the Controlled Substances Act ("CSA") violates the Commerce Clause. Only Counts 2, 5 and 6 of the indictment allege violations of the CSA. Counts 3 and 4 allege violations of 18 U.S.C. §§ 924, which criminalizes the use of firearms in relation to a drug trafficking crime. Section 924(c)(2) provides that "[f]or purposes of this subsection, the term 'drug trafficking

crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." Thus the CSA is also implicated in Counts 3 and 4. Accordingly, the Magistrate construes Defendant's Motion as a Motion to Dismiss Counts 2-6.

Congress may regulate three broad categories of activities under its commerce power: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce, and (3) those activities that substantially affect interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558-89 (1995). The third category is at issue in this case. To the extent that Defendant intends to argue that the CSA is an unconstitutional violation of the Commerce Clause on its face, that argument is foreclosed by *United States v. Tisor*, 96 F.3d 370 (9th Cir. 1996). To the extent Defendant intends to argue that the CSA is an unconstitutional violation of the Commerce Clause as applied to Defendant, that argument is without merit.[2]

The Magistrate must presume the truth of the allegations in the charging instruments. *United States v. Caicedo*, 47 F.3d 370, 371 (9th Cir. 1995). The facts alleged in the indictment are, in relevant part, that Defendant conspired to possess with the intent to distribute two kilograms of cocaine. Case law firmly establishes Congress' power to regulate purely local activities that are part of an economic "class of activities" that have a substantial effect on interstate commerce. *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005). The alleged conduct falls with the class of activities identified by Congress as affecting interstate commerce because (1) Congress has specifically identified cocaine as a controlled substance, *see* 21 U.S.C. § 812, and (2) Congress has legislated that the localized exchange of controlled substances is part of a class of activities that affect a cumulative, interstate harm. In enacting the CSA, Congress made the following Congressional findings:

> (3) A major portion of the traffic in controlled substances flows through

---

[2] At the hearing on Defendant's Motion, the government argued that whether the CSA as applied affects interstate commerce is a question for the factfinder pursuant to *United States v. Nukida*, 8 F.3d 665 (9th Cir. 1993). *Nukida* is not applicable, however, because it involved a statute in which an interstate nexus is an element of the charged offense. The government does not need to demonstrate an interstate nexus as an element of a CSA offense.

interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because--
    (A) after manufacture, many controlled substances are transported in interstate commerce,
    (B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and
    (C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.
(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.
(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.
(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

Thus, even if the conspiracy alleged in the present case does not have a direct interstate nexus, it falls within the ambit of the proscribed conduct contemplated by Congress.

Defendant's Motion, however, is not based on the facts alleged in the indictment but on facts alleged in the government's disclosure, which the Defendant assumes to be true solely for purposes of this Motion. Specifically, Defendant alleges that during an interview, cooperating witness Ryan Polito told agents that he located a man named Raul Figueroa through a friend. According to Polito, Figueroa assisted Polito with the purchase of a small quantity of cocaine. When Polito asked Figueroa to assist with the purchase of several kilos of cocaine, Figueroa balked. Figueroa also made statements to investigating agents; his description of Polito's drug purchases and attempted drug purchases was similar to the version of events described by Polito. Other pleadings and records filed with the Court suggest that the failed drug exchange between Polito and Figueroa led to the May 8, 2008 firebombing. Based on these allegations, Defendant claims that Polito and the other alleged members of the conspiracy never did more than offer to purchase drugs, and that a mere offer to purchase drugs cannot affect interstate commerce.

This argument fails for two reasons. First, Defendant ignores the fact that Polito made an initial (albeit small) cocaine purchase with the intent of establishing an avenue for larger

1 purchases. To describe the exchange between Polito and Figueroa as nothing more than "a speculative conversation about a theoretical transaction that never came to fruition" mischaracterizes the alleged evidence. Second, Defendant's claim that the evidence proves nothing more than an offer to purchase is really just another way of saying that Defendant does not believe there is sufficient evidence to demonstrate that he and his co-defendants conspired to possess with the intent to distribute two kilograms of cocaine. Such an argument must be considered by the fact-finder, not raised in a pretrial motion. *See United States v. Jensen*, 93 F.3d 667 (9th Cir. 1996).

**RECOMMENDATION**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Dismiss.

The parties have fourteen (14) days from the date of entry of this Report and Recommendation to serve and file written objections. The parties are advised that any objections should be filed with the following caption: **CR 11-2230-TUC-DCB.**

DATED this 6th day of November, 2011.

Jennifer G. Zipps
United States District Judge